# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**THELMA JACKSON**                                           **CIVIL ACTION NO.**

**VERSUS**                                                   **19-819-BAJ-EWD**

**OUR LADY OF THE LAKE**

## NOTICE

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Baton Rouge, Louisiana, January 13, 2020.

                                                **ERIN WILDER-DOOMES**
                                                **UNITED STATES MAGISTRATE JUDGE**

T. Jackson -7018 0360 0001 1615 6612

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**THELMA JACKSON**                               **CIVIL ACTION NO.**

**VERSUS**                                       **19-819-BAJ-EWD**

**OUR LADY OF THE LAKE**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Complaint[1] filed by Thelma Jackson ("Plaintiff"), individually and on behalf of her son, Stylez Jackson ("Stylez"). Following a hearing held pursuant to *Spears v. McCotter*,[2] and for the reasons that follow, it is recommended that Plaintiff's suit be dismissed without prejudice.

**I.     Background**

On November 26, 2019, Plaintiff filed a Complaint against Our Lady of the Lake Hospital ("Our Lady of the Lake").[3] That same day, Plaintiff filed a motion to proceed *in forma pauperis*, which was granted.[4] A hearing was also set pursuant to *Spears v. McCotter*[5] ("*Spears* hearing"), to determine if any or all of Plaintiff's claims were frivolous and subject to dismissal.[6] At the *Spears* hearing, Plaintiff presented information regarding the basis for her claims. At the conclusion of the hearing, Plaintiff was advised that a report would be issued with a recommendation to the district judge that Plaintiff's claims should be dismissed, but that Plaintiff would have fourteen days (14) to submit objections to the report. Plaintiff was also advised that

---

[1] R. Doc. 1. The document is titled "Emergency Complaint."

[2] 766 F.2d 179 (5th Cir. 1985).

[3] R. Doc. 1. The Complaint is dated August 13, 2019 but was filed with the Court on November 26, 2019.

[4] R. Doc. 3.

[5] 766 F.2d 179 (5th Cir. 1985).

[6] R. Doc. 4.

the district judge would make the final decision and issue a ruling as to whether Plaintiff's claims would be allowed to proceed.

## II.     Plaintiff's Claims

Plaintiff's claims are that the doctors and nurses at Our Lady of the Lake did not accurately diagnose and/or treat Stylez following his kidnapping. In support of her claims, Plaintiff specifically points to the following events in her Complaint, which she also testified to during the Spears hearing. Plaintiff took Stylez to the Our Lady of the Lake emergency room on or about July 15, 2018 after she recovered Stylez from his kidnappers with the assistance of local law enforcement.[7] At that time, Stylez was "malnourished and dehydrated" and had some discoloration in his groin region.[8] Doctors and nurses at Our Lady of the Lake "physically assessed" Stylez, gave him two (2) antibiotics, collected a urine sample via catheter, and performed a sexual assault forensic exam (*i.e.*, a "rape kit").[9] Plaintiff complains that Our Lady of the Lake failed to notify her of the results of the urine sample or rape kit.[10]

After Plaintiff and Stylez left the emergency room,[11] Our Lady of the Lake called Plaintiff and requested that she bring Stylez back for a repeat urine sample "because they didn't have enough urine for the results."[12] Plaintiff explained her concerns to the doctor that Stylez's urine sample would be tainted by the antibiotics previously administered by Our Lady of the Lake, but she brought Stylez back to the hospital because he was "uncomfortable and intense[ly] crying."[13]

---

[7] R. Doc. 1, p. 1.

[8] R. Doc. 1, p. 1.

[9] R. Doc. 1, p. 1.

[10] R. Doc. 1, pp. 1-2.

[11] R. Doc. 1, p. 2.

[12] R. Doc. 2.

[13] *Id*.

2

Plaintiff says Our Lady of the Lake "crossed several boundaries," including filing a "grievance" on Stylez's behalf,[14] and that Our Lady of the Lake "did nothing to ease [Stylez's] pain."[15] She claims that Our Lady of the Lake did not draw blood from, or take any X-rays of, Stylez while he was at the emergency room following his kidnapping.[16] Likewise, Plaintiff claims that Our Lady of the Lake failed to diagnose Stylez with anemia and a heart murmur.[17]

Plaintiff demands the following: (1) $5.5 million dollars, (2) a written apology from Our Lady of the Lake, and (3) that the "grievance" prepared by Our Lady of the Lake be "disregarded." Plaintiff also demands that she receive "5x the demand amount" if any "healthcare provider" engages in retaliatory conduct.[18]

### III. Plaintiff Has Not Established That This Court Has Subject Matter Jurisdiction

During the *Spears* hearing, the Court explained that, unlike state district courts, which are courts of general jurisdiction and may therefore hear all types of claims, federal courts may only entertain those cases over which there is federal subject matter jurisdiction. Federal subject matter jurisdiction may be established in two ways. This Court has subject matter jurisdiction over "civil actions arising under the Constitution, laws, or treatises of the United States."[19] This Court also has subject matter jurisdiction over civil actions where the amount in controversy exceeds $75,000.00 exclusive of interest and costs and the parties are completely diverse (*i.e.*, all plaintiffs

---

[14] R. Doc. 1, p. 2. Plaintiff does not explain what a grievance is, but Plaintiff claims that she told Our Lady of the Lake that she "would write [her] own grievance for [her] own child Stylez Jackson." *Id*.

[15] R. Doc. 1, p. 2.

[16] R. Doc. 1, p. 3.

[17] R. Doc. 1, p. 3. Plaintiff explains in her Complaint that other doctors diagnosed Stylez with anemia and a heart murmur at some point after Stylez's visits to the Our Lady of the Lake hospital.

[18] R. Doc. 1, p. 4.

[19] 28 U.S.C. § 1331.

3

are citizens of a different state than all defendants).[20] The burden of establishing federal subject matter jurisdiction is on the party asserting it (here, Plaintiff).[21] A court may raise on its own at any time the issue of whether subject matter jurisdiction exists.[22]

Plaintiff's Complaint involves medical malpractice claims against Our Lake of the Lake regarding its handling of Plaintiff's son, Stylez, following his kidnapping.[23] All the allegations relate to things Plaintiff says Our Lady of the Lake did or did not do with regard to Stylez's examination and treatment. The Court advised Plaintiff during the *Spears* hearing that her Complaint does not reference the United States Constitution or any federal statutes. As Plaintiff's Complaint does not assert a federal claim, this Court does not have subject matter jurisdiction under 28 U.S.C. § 1331. While Plaintiff's $5.5 million demand satisfies the amount in controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332,[24] Plaintiff has not adequately alleged her own citizenship or the citizenship of Our Lady of the Lake. During the *Spears* hearing, however, Plaintiff confirmed that she is a citizen of Louisiana. A review of the Louisiana Secretary of State's records shows that Our Lady of the Lake[25] and the Franciscan Missionaries,[26] which are used interchangeably in the Complaint when referencing the defendant, are both Louisiana non-profit corporations with their principal places of business in Louisiana. As Plaintiff is not

---

[20] 28 U.S.C. § 1332.

[21] *Willoughby v. United States ex rel. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013).

[22] *McDonal v. Abbott Laboratories*, 408 F.3d 177, 182, n. 5 (5th Cir. 2005).

[23] R. Doc. 1, pp. 1-3.

[24] R. Doc. 1, p. 4 (demanding $5.5 million).

[25] According to the Louisiana Secretary of State's website, Our Lady of the Lake Hospital, Inc. is a citizen of the State of Louisiana.

[26] There are nine (9) entities with the name "Franciscan Missionaries" in the title listed on the Louisiana Secretary of State's website. All of them are citizens of the State of Louisiana.

completely diverse from Our Lady of the Lake, the Court also does not have subject matter jurisdiction under 28 U.S.C. § 1332.

"A federal court must presume that an action lies outside its limited jurisdiction, and the burden of establishing that the court has subject matter jurisdiction to entertain an action rests with the party asserting jurisdiction."[27] "A district court can dismiss an action *sua sponte* for lack of federal subject matter jurisdiction…even where the defendant makes no responsive pleadings and does not move to dismiss for want of subject-matter jurisdiction."[28] Because Plaintiff has not met her burden of establishing that this Court has federal subject matter jurisdiction, this case should be dismissed without prejudice. [29]

---

[27] *Edwards v. Jackson Hinds Comprehensive Health Center*, No. 17-972, 2018 WL 3653761 (S.D. Miss. June 11, 2018), at *1 (*quoting Nixon v. Goldman Sachs Mortg. Corp.*, No. 16-597, 2016 WL 3763425, at **2–3 (N.D. Tex. July 14, 2016) (*citing* 28 U.S.C. §§ 1331, 1332); *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)). *See also McKendall v. U.S. Army Corps of Engineers*, No. 15-2631, 2016 WL 3218842, at *1 (E.D. La. June 10, 2016) ("The party asserting jurisdiction bears the burden of establishing that the district court possesses subject-matter jurisdiction.") (*citing Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

[28] *Dickens v. TASB Risk Management*, 17-00216, 2018 WL 6184804, at *1 (W.D. Tex. Nov. 21, 2018). *See also*, *Craig v. Our Lady of the Lake Regional Medical Center*, No. 15-814, 2017 WL 1113326, at *2 (M.D. La. March 23, 2017) ("The Court may dismiss an action *sua sponte* if it 'determines at any time that it lacks subject-matter jurisdiction.'") (*citing* Fed. R. Civ. P. 12(h)(3)).

[29] Plaintiff made an oral request during the *Spears* hearing to have this action joined under Federal Rule of Civil Procedure 20 with another action filed by Plaintiff in this Court. *See Jackson, et al. v. The National Center for Missing and Exploited Children*, No. 19-607. In that case, Plaintiff filed suit against The National Center for Missing and Exploited Children ("NCMEC"), claiming that NCMEC did not follow its protocol and/or did not sufficiently aid Plaintiff in her effort to recover Stylez after his kidnapping. *See* Action No. 19-607, at R. Doc. 1. Rule 20(a)(2) provides that "[p]ersons…may be joined as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Accordingly, courts have described Rule 20 as creating "a two-prong test," allowing joinder of parties "when (1) their claims arise out of the same transaction, occurrence, or series of transactions or occurrences and when (2) there is at least one common question of law or fact linking all claims." *Parker v. Louisiana Department of Public Safety and Corrections*, No. 18-1030, 2019 WL 5103811, at *2 (M.D. La. Oct. 11, 2019) (quoting *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010)). "When applying the two-prong test, the Court considers whether there is a logical relationship between the claims and whether there is any overlapping proof or legal question." *Peters v. Singh*, No. 16-842, 2017 WL 5128750, at *2 (M.D. La. Nov. 26, 2017). "The Court must also consider whether settlement or judicial economy would be promoted, whether prejudice would be averted [], and whether different witnesses and documentary proof are required for separate claims." But, "the Court has the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness," even if the two-prong test is satisfied. *Id*. Indeed, "district courts have considerable discretion to deny joinder when it would not facilitate judicial economy and when different witnesses and documentary proof would be required for plaintiff['s] claims." *Acevedo*, 600 F.3d at 522. While the transactions or occurrences at issue in both cases are part of a

5

## IV. Recommendation

For the reasons set forth herein, the undersigned **RECOMMENDS** that this case be **DISMISSED WITHOUT PREJUDICE**.

**IT IS ORDERED** that the Clerk of Court is directed to send a copy of this Magistrate Judge's Report and Recommendation to Plaintiff at her address listed on PACER, via certified mail return receipt requested, and via regular mail.

Signed in Baton Rouge, Louisiana, on January 13, 2020.

                          **ERIN WILDER-DOOMES**
                          **UNITED STATES MAGISTRATE JUDGE**

---

chronology of events related to Stylez's kidnapping and recovery, there is no logical relationship between Plaintiff's claims against Our Lady of the Lake and her claims against NCMEC. Likewise, Plaintiff's claims against Our Lady of the Lake and NCMEC do not involve any overlapping proof or legal questions and would require different witnesses and documentary proof, among other things. Because neither prong of the two-prong test has been satisfied, the undersigned recommends that Plaintiff's request to join her actions under Rule 20 also be denied.

6